UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Stephen Bain,                    :
          Plaintiff,             :
                                 :
          v.                     :    File No. 2:07-CV-146
                                 :
Transportation Corp. Of          :
America, Corrections             :
Corp. of America,                :
Dr. Lippmann, Dr. Warren,        :
Vermont Department of            :
Corrections, Robert              :
Hofmann, Prison Health           :
Service, Dr. Susan Wehry,        :
State of Vermont, and            :
John and Jane Doe,               :
          Defendants.            :

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 14, 15 and 26)

Plaintiff Stephen Bain, a Vermont inmate proceeding *pro
se*, brings this action claiming that he was wrongfully and
abusively transported to an out-of-state facility.  His
legal claims, which arise largely out of events that took
place during the transport, include assault and battery,
failure to accommodate under the Americans with Disabilities
Act ("ADA"), cruel and unusual punishment, and retaliation
for prior litigation.  Defendants Transportation Corporation
of America ("TransCor"), Corrections Corporation of America
("CCA"), the State of Vermont, the Vermont Department of
Corrections ("DOC"), DOC Commissioner Robert Hofmann and Dr.

Susan Wehry have moved to dismiss the complaint on various grounds. Also pending before the Court are Bain's motions to amend his complaint and to join additional defendants.

In addition to the pending motions, the Court notes that a potential class action, involving over 70 Vermont inmates, is pending against TransCor in the United States District Court for the Middle District of Tennessee. See Myers v. Transcor America, 2008 WL 570947 (D. Vt. Feb. 28, 2008) (transferring action to Tennessee). That case involves the alleged mistreatment of Vermont inmates while being transported out of state. Because Bain's allegations have significant overlap with the Tennessee litigation, the Court should consider not only the arguments presented by the movants, but also the question of whether Bain's transport-related claims should be litigated in Tennessee.

For the reasons set forth below, I recommend the motion to dismiss be GRANTED, and that Bain's motions to amend and/or join be GRANTED in part and DENIED in part. I further recommend that the surviving portion of this case, which consists solely of conduct that is directly related to Bain's treatment during his interstate transport, be TRANSFERRED to the Middle District of Tennessee.

2

## Factual Background

For purposes of the pending motions, the facts alleged in Bain's complaint will be accepted as true. At all times relevant to this case, Bain has been a prisoner in the custody of the Vermont DOC. The DOC contracts with CCA to house some of its prisoners in private, out-of-state facilities. Transport to those facilities is carried out by TransCor.

On January 10, 2007, Bain was transferred from Vermont to North Fork Correctional Facility, a CCA facility in Sayre, Oklahoma. Bain reports that he was surprised by the transfer, since he had expected to be placed at a work camp in St. Johnsbury, Vermont. He contends that he has been denied access to the work camp in violation of the ADA.[1]

Bain alleges that he was taken "across state lines against his will." He explains that guards placed him in "handcuffs, shackles, a black box[2] and a waste chain, all

---

[1]  In Bain v. Hofmann, 2007 WL 2318064 (D. Vt. Aug. 8, 2007), the Court dismissed Bain's ADA claim without prejudice, holding that because resolution of the work camp issue in Bain's favor would impact the length of his sentence, it should have been brought in a petition filed pursuant to 28 U.S.C. § 2254. Bain's § 2254 petition was subsequently dismissed without prejudice for lack of exhaustion. See Bain v. Hofmann, 2007 WL 4268919 (D. Vt. Nov. 30, 2007). The work camp/ADA claim is not a significant allegation in this case, and in light of previous dismissals need not be addressed again here.

[2]  The black box has been described as a mechanism "applied over the chain and lock area of conventional handcuffs to form a rigid link between the two wristlets." Moody v. Proctor, 986 F.2d 239, 240 n.3 (8th Cir. 1993).

3

chained together, then chained him together by another short chain, to another offender," and placed him on a bus. The bus ride took over 50 hours and caused Bain significant pain, both as a result of overly-tight restraints and from having to sit in one position. Bain asked several times for the handcuffs and shackles to be loosened, but no adjustments were made. He also notified "Defendants" of his need for accommodations due to pre-existing chronic pain. He received no such accommodations, with the "Defendants" allegedly stating: "they know how we ship you."

Bain has other complaints about the bus ride. He claims that bathroom breaks were "infrequent," and that the bathroom was very small. When he received food or drink, he had to consume it with his hands still shackled to his lap. The temperature on the bus was either extremely hot or cold, and the sound on movies being shown was "excessively loud." He alleges that the loudness triggered his migraine symptoms, which he suffers as the result of a traumatic brain injury.

Bain made his discomfort known, but was again denied any accommodation. His pain medication was sent with him on the transport bus, along with relevant medical records.

4

Nonetheless, his medications were at times withheld, and when they were dispensed it was by non-medical, "non-gloved wearing persons, with unwashed hands."

Once in Oklahoma, and as a direct result of the bus ride, Bain's back, neck, shoulder, arm, legs, feet and head were all painful for several days. His wrists and ankles were swollen, bruised and cut as a result of the overly-tight cuffs and shackles. The swelling abated after nearly two weeks; the bruises and lacerations took longer to heal.

When he arrived in Oklahoma, he was removed from his prescribed course of medical care.[3] When he filed his complaint on July 5, 2007, he still had not received his legal files or his Bible, which he believed were still at a correctional facility in Vermont. He claims that the motivation for all of the conduct alleged in the complaint was retaliation for his grievances and legal filings in state and federal court.

The complaint does not clearly set forth the causes of action being raised. In the "Discussion" section, Bain claims: involuntary transport over state lines; assault;

_____

[3] Bain has brought two other cases in this Court alleging inadequate medical care in Oklahoma. The cases were consolidated and transferred to the United States District Court for the Western District of Oklahoma. Bain v. Corrections Corp. of America, 2008 WL 630057 (D. Vt. Mar. 7, 2008).

battery; failure to accommodate as required by the ADA; deliberate indifference to serious medical needs and cruel and unusual punishment (presumably in violation of the Eighth Amendment); and a conspiracy to deprive him of his legal papers. The "Memorandum of Law" incorporated into the complaint cites the Eighth Amendment; assault and battery; intentional infliction of emotional distress; First Amendment retaliation; and the ADA. For relief, Bain seeks an order requiring the defendants to cease and desist from any retaliatory acts, as well as compensatory and punitive damages.

<u>Discussion</u>

I. <u>Vermont Defendants' Motion to Dismiss</u>

TransCor and CCA have moved to dismiss primarily on the merits of Bain's claim that his treatment during transport was unconstitutional. The State of Vermont, the Vermont DOC, Commissioner Hofmann and Dr. Wehry (collectively the "Vermont defendants") move for dismissal of Bain's constitutional claims on the basis of Eleventh Amendment immunity and lack of personal involvement. They also argue that Bain has failed to state a valid claim of either ADA violations or retaliation. The Court first addresses the

6

Vermont defendants' arguments for dismissal.

On a motion to dismiss, the Court must accept as true the factual allegations in the complaint and must draw all inferences in the plaintiff's favor.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  To survive dismissal, a complaint must plead enough facts to be plausible on its face.  Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).

With respect to any claims for damages, the State of Vermont, the DOC, and the individual Vermont defendants sued in their official capacities are protected by the State's sovereign immunity.  Under the doctrine of sovereign immunity, the Eleventh Amendment bars suits by private citizens against a state or its agencies in federal court unless the state has waived its immunity or Congress has properly abrogated that immunity.  See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 55 (1996).  The protection of the Eleventh Amendment also extends to suits for monetary damages against state officers sued in their official capacities.  See Brandon v. Holt, 469 U.S. 464, 471

7

(1985).

In this case, it is clear that neither Vermont nor Congress has waived the sovereign immunity that protects the Vermont defendants from a damages action. There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 67 (1989).

It is equally clear that Vermont has not waived its sovereign immunity under § 1983. See 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not explicitly waived). Furthermore, the Supreme Court has held that just as states and state agencies are not "persons" under § 1983, state officers acting in their official capacities are not "persons" within the meaning of the statute since they assume the identity of the government that employs them. See Hafer v. Melo, 502 U.S. 21, 27 (1991). Accordingly, Bain's damages claims against the Vermont defendants, including Commissioner Hofmann and Dr. Wehry when sued in

their official capacities, should be DISMISSED.[4]

For purposes of individual capacity liability, Commissioner Hofmann and Dr. Wehry argue that they were not personally involved in any allegedly unconstitutional conduct. Personal involvement is required for an award of damages under § 1983. Moffit v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). While "respondeat superior cannot form the basis for a § 1983 claim," Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998), the personal involvement of a supervisory defendant in a § 1983 claim may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who

---

[4] Under a narrow exception to the Eleventh Amendment's bar, the Court may award prospective injunctive relief against a state employee's future official conduct. See generally Ex Parte Young, 209 U.S. 123 (1908). Here, Bain requests an injunction on continued retaliation. For reasons set forth below, I am recommending that his retaliation claims against the Vermont defendants be DISMISSED. Such dismissal would negate any potential application of the Ex Parte Young exception.

9

committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.  See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

The complaint alleges generally that the Commissioner was responsible for Bain's "care, safety, security and custody."  Dr. Wehry is alleged to be a supervisor of medical contractors, and to have approved Bain's transfer to Oklahoma.  There are no other specific allegations in the complaint against either of these defendants.

In response to the defendants' personal involvement argument, Bain explains that Dr. Wehry made the decision to transfer him despite her knowledge of his medical condition and alleged disabilities.  Bain also alleges that he had personal contact with Commissioner Hofmann and Hofmann's predecessor, Commissioner Steven Gold, and that they were aware of "his protected rights being abrogated . . . ." (Paper 14 at 2).

Although not entirely clear from Bain's filings, the allegations about Dr. Wehry seem to imply that she was aware

10

of the conditions he would face during transport. In support of this implication, Bain cites statements by TransCor employees that Vermont officials "know he we do things." Even accepting Bain's allegations as true, the link between Dr. Wehry and a general statement about the knowledge possessed by Vermont officials is extremely tenuous. Furthermore, the complaint offers no other facts to support a claim that Dr. Wehry knew what the conditions on the bus ride would be. Bain's allegations of constitutional violations by Dr. Wehry may therefore be fairly characterized as bald and conclusory, and are insufficient to survive a motion to dismiss.

Bain's claims against Commissioner Hofmann, in addition to being conclusory, are excessively vague. Bain argues that Hofmann was aware of "protected rights" being violated. However, given the many claims that Bain has presented here and in other litigation,[5] it is not clear which specific rights Hofmann failed to protect. Bain's opposition memorandum speaks mainly of the work camp issue, which is not a material part of this case. Consequently, claims of unconstitutional conduct brought against Commissioner

---

[5] The Court is aware of 13 cases filed by Bain since the beginning of 2006.

Case 3:08-cv-00656  Document 28  Filed 05/07/08  Page 11 of 25 PageID #: 242

Hofmann should also be DISMISSED.

Bain's ADA claims against the Vermont defendants should be dismissed as well. In other cases, Bain has argued that the DOC violated his rights under the ADA by denying him access to the work camp. These claims have been dismissed without prejudice, ultimately for failure to exhaust state court remedies. See Bain v. Hofmann, 2007 WL 4268919 (D. Vt. Nov. 30, 2007). In this case, Bain appears to claim that failures to accommodate him during the bus ride to Oklahoma violated his ADA rights. He does not allege, however, that either Commissioner Hofmann or Dr. Wehry had any direct supervisory responsibility over the TrasnCor employees. With no allegation of either personal or supervisory involvement in the alleged violations, there can be no claim against the Vermont defendants for ADA violations that took place during the trip to Oklahoma.

Bain's next claim is that the "Defendants" retaliated against him for conduct that is protected under the First Amendment. He contends that all of the allegations in the complaint, including his prison transfer, the alleged abuses on the bus, the denials of his medications in Oklahoma and the failure to send his papers from Vermont, were part of a

pattern of retaliation for his grievances and legal filings. With respect to the Vermont defendants, however, the only allegations that might pertain are those related to approval of his transfer, and possibly the alleged failure to send his legal materials and bible.[6]

"[T]o state an actionable claim for retaliation, [Plaintiff] 'must advance non-conclusory allegations establishing (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001)). Because the filing of prison grievances and lawsuits is constitutionally protected activity, Bain satisfies the first element of the test. Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003) (citing Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) and Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988)). With respect to the second element, adverse action, "a plaintiff must allege

---

[6] None of Bain's state law claims survive the motion to dismiss, as his claims of assault, battery and intentional infliction of emotional distress all focus on conduct that occurred during the transport.

Case 3:08-cv-00656  Document 28  Filed 05/07/08  Page 13 of 25 PageID #: 244

that defendants subjected him to 'conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" <u>Morales</u>, 278 F.3d at 131 (quoting <u>Dawes</u>, 239 F.3d at 493). Courts have held that transfers to other facilities can satisfy the adverse-action requirement. <u>See Davis v. Kelly</u>, 160 F.3d 917, 920 (2d Cir. 1998); <u>Chavis v. Struebel</u>, 317 F. Supp. 2d 232, 238 (W.D.N.Y. 2004).

The only Vermont defendant alleged to have been personally involved in Bain's transfer is Dr. Wehry. Specifically, the complaint alleges that Bain's prison transfer was approved "by named Defendants, [Prison Health Services] and/or Dr. Susan Wehry."[7] There is no allegation that either Commissioner Hofmann or Dr. Wehry was responsible for failing to send Bain his papers.

Although Bain's claims of personal involvement by Dr. Wehry in any acts of retaliation are vague, the principal flaw in his retaliation claim is the causal link element. Indeed, Bain offers no specific facts tying his transfer to his litigation history. As this Court is well aware from

---

[7] In his opposition memorandum and motion to amend, Bain states that Dr. Wehry "did make the ultimate decision to transfer and transport Plaintiff." (Paper 14 at 2).

14

other litigation, transfers out of state are not uncommon.
The Court is also aware that Bain is a frequent litigant.
Nonetheless, he offers only the bare conclusion that his
transfer must have been retaliatory, with no specific facts
to support a claim against either the Commissioner or Dr.
Wehry.  In the absence of any "non-conclusory" allegations,
Morales, 278 F.3d at 131, I recommend that Bain's
retaliation claim be DISMISSED.

II.  Motions to Amend and/or for Joinder

The Second Circuit has held that a *pro se* pleading
containing "the seeds" of a viable claim should not be
dismissed without leave to amend.  Branum v. Clark, 927 F.2d
698, 705-06 (2d Cir. 1991).  In this case, Bain has already
asked the Court for leave to amend his complaint, offering
supplements to his claims and moving to "join" additional
parties.  (Paper 14).  His first such motion takes aim at
several of the defendants' arguments for dismissal,
including the claim that Hofmann and Wehry were not
personally involved in unconstitutional conduct.[8]  Bain also

---

[8]  Because Bain's proposed amendments are intertwined with his arguments
opposing the motion to dismiss, it is at times difficult to determine which
facts he wants to add to his complaint.  Indeed, the motion to amend does not
comply with the Local Rule, which requires a red-lined version of the amended
complaint.  L.R. 15.1.  The Court will, nonetheless, give the motion a liberal
reading and assume that all new factual allegations are proposed amendments.

15

seeks to add other individual defendants who, he contends, were aware of discriminatory and retaliatory acts.

Fed. R. Civ. P. 15(a)(2) states that courts "should freely give leave when justice so requires."  <u>See id.</u> Conversely, a district court may deny leave to amend where such amendment would be futile.  <u>See</u> <u>Hom Sui Ching v. United States</u>, 298 F.3d 174, 180 (2d Cir. 2002) (citing <u>Jones v. N.Y. State Div. of Military & Naval Affairs</u>, 166 F.3d 45, 50 (2d Cir. 1999)).  An amendment will be deemed futile, and the motion to amend denied, where the amendment would be subject to dismissal for failure to state a claim upon which relief may be granted.  <u>See</u> <u>Milanese and Milanese v. Rust-Oleum Corp.</u>, 244 F.3d 104, 110 (2d Cir. 2003).

Here, Bain's first set of proposed amendments (Paper 14) would not save his claims against the Vermont defendants.  He alleges that he made Commissioner Hofmann aware that his rights were being violated, but again fails to allege any specific events of which Hofmann would have been aware, or actions that Hofmann should have rectified. (Paper 14 at 2).  Bain also alleges patterns or practices, without specifying what those patterns or practices have been.  As a consequence, the Court is left with broad

16

allegations that have already been deemed inadequate.

Bain tries to bolster his claim against Dr. Wehry by alleging that she ordered his transfer. As discussed above, he does not allege that Dr. Wehry was aware of the alleged abuses likely to be suffered during transport. Ordering a transfer is not, by itself, unconstitutional. Accordingly, adding the fact that Dr. Wehry ordered the transfer does not alter the outcome of Bain's claim against her.

Bain also moves to join add three new defendants. The first is Ray Flum, who allegedly provided an affidavit acknowledging that Bain has been excluded from the work camp because of a disability. As noted above, the work camp ADA claim was dismissed in one of Bain's other federal cases and will not be reviewed again here. Moreover, the fact that Flum may have provided testimony on the issue does not render him a necessary party in this litigation.

Bain further claims that he discussed his out of state placement with Kevin Oddy, who "was aware of Plaintiff being transported to Oklahoma based upon retaliation for his filing complaints with state agencies, and filing for redress of his grievances in the federal court." Bain makes a similar claim about Todd Rushlow, who, he claims,

17

"expressly notified the Plaintiff he was going nowhere as long as he had/has any litigation pending against any of the Defendants." Id. at 3.

The fact that Oddy and Rushlow, both of whom are presumably DOC employees, had knowledge of retaliation against Bain does not mean that they are subject to liability for the alleged retaliation. Under the standards set forth above, Bain must allege that these persons were either personally involved in unconstitutional conduct, or that they are liable as supervisors. None of his claims allege the requisite involvement. Claims against these persons would, therefore, be dismissed, and his motion to amend to add them to the case is futile.

Having missed the mark in his initial complaint and his first attempt to amend, Bain makes a second effort to add additional parties. (Paper 26). In his motion for "additional joinder of persons and joinder of claims," Bain alleges that two correctional officers in Vermont conspired with TransCor personnel to retaliate against him. His specific claim is that

> Peter Potanas, Howard Brooks and other
> correctional staff at Southern State Correctional
> Facility, in Springfield, Vermont, alerted
> transport staff to retaliate against him for

18

> exercising his protected conduct. The foregoing
> individuals had/have a long running bone-to-pick
> with regards to Plaintiff seeking redress of his
> grievances in court and with state agencies.

(Paper 26 at 2). Bain also alleges that Potonas "alerted Plaintiff he intended to withhold his extensive legal files not shipping them, as did Defendant Brooks." Id.

The Vermont defendants question the credibility of these claims, arguing that it is "unthinkable" that Bain would have omitted such allegations from his initial complaint. (Paper 27 at 6). Despite the defendants' urgings, the Court may not make credibility determinations at this early stage in the case. Smith v. Johnson & Johnson, 2000 WL 1585070, at *3 (S.D.N.Y. Oct. 23, 2000) ("a court cannot determine credibility or make factual findings on a motion to amend"). If the allegations are true and correctional staff in Vermont did, in fact, request that Bain be mistreated, Bain may have a viable claim against them.

Bain's claim that he has been denied his legal materials would not survive a motion to dismiss, as he has failed to show any actual injury resulting such deprivation. See Lewis v. Casey, 518 U.S. 343, 353 (1996). Construing the claim as one of denial of court access, Bain would need

19

to show that "a nonfrivolous legal claim had been frustrated or was being impeded" as a result of the proposed defendants' conduct. Id. Bain includes no such claim in his proposed amendments.

Bain's second motion to amend and join parties also claims that an inmate in Kentucky assaulted him in January 2008, and that four officials at the Kentucky facility should be joined in this case as defendants. These proposed amendments would not survive a motion to dismiss or transfer for improper venue. Indeed, under 28 U.S.C. § 1391(b), venue lies in

> (1) a judicial district where any defendant
> resides, if all defendants reside in the same
> State, (2) a judicial district in which a
> substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part
> of property that is the subject of the action is
> situated, or (3) a judicial district in which any
> defendant may be found, if there is no district in
> which the action may otherwise be brought.

28 U.S.C. § 1391(b). Pursuant to both 28 U.S.C. § 1391(b)(1) and § 1391(b)(2), venue for Bain's claims lies in Kentucky. The motion to amend to add these persons as parties should, therefore, be DENIED.

In sum, Bain's claims against the original Vermont defendants fail to state a claim for which relief may be

20

granted. His efforts to amend his claims are largely futile, with the sole exception of a conspiracy claim against two correctional officers in Springfield, Vermont. For reasons discussed below, I am recommending that all claims against TransCor and CCA be transferred out of Vermont. Since Bain's conspiracy claims against the correctional officers relate directly to his treatment during the transport to Oklahoma, I recommend that those claims be transferred as well.

III. Claims Against TransCor and CCA

The defendants argue that Bain's treatment during his transport to Oklahoma was constitutional. As noted above, a large group of Vermont inmates is currently suing TransCor with transport-related claims similar to those brought in this case. The Court must therefore consider whether it is best to litigate the two actions in different jurisdictions, or whether the interests of justice require a transfer.

A district court may transfer a case *sua sponte*. See Lead Industries Ass'n, Inc. v. Occupational Safety and Health Admin., 610 F.2d 70, 79 n. 17 (2d Cir. 1979); Concession Consultants, Inc. v. Mirisch, 355 F.2d 369,

Case 3:08-cv-00656  Document 28  Filed 05/07/08  Page 21 of 25 PageID #: 252

371-72 n. 3 (2d Cir. 1966).[9]  The interests favoring a
transfer in this case are at least twofold.  First, venue in
Vermont is questionable.  Of the original defendants, only
TransCor and CCA remain.  Both are corporations
headquartered in Tennessee.  <u>See</u> <u>Myers</u>, 2008 WL 570947, at
*6 (TransCor); <u>Stutes v. Tipton</u>, 2008 WL 373629, at *1 (D.
Vt. Feb. 8, 2008) (CCA); <u>Thompson v. CCA-LAC Medical Dep't</u>,
2007 WL 390356, at *6 (D. Vt. Jan. 30, 2007) (CCA).
Accordingly, under 28 U.S.C. § 1391(b)(1), venue is proper
in Tennessee.

The second concern relates to the pending litigation in
the Western District of Tennessee, and the possibility of
inconsistent judgments.  The Tennessee litigation was
brought by four Vermont inmates, and over seventy others
have moved to join the case.  When this Court transferred
that action to Tennessee, a motion for class certification
was pending.

Regardless of whether a class is certified, the
interests of judicial economy and administration strongly
favor having the same court preside over all cases involving

---

[9]  Although the defendants do not raise venue as an issue in their initial
filings, Bain argues in his opposition that venue in Vermont is proper.
(Paper 14 at 18-19).

TransCor's treatment of Vermont prisoners.  If this case is transferred to Tennessee, the federal court there may determine whether the two cases should be consolidated in order to avoid inconsistencies.  Assuming no consolidation, the Tennessee court could still manage overlapping discovery to the extent that testimony or documents produced may be relevant to both cases.

Furthermore, if this Court were to dismiss Bain's claims against TransCor and CCA for improper venue, he might be barred by relevant limitations periods from litigating his case in Tennessee.  "A 'compelling reason' for a transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on re-filing in the proper forum." Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 435 (2d Cir. 2005) (quoting Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999)).  Bain filed his complaint several months ago, and most events alleged therein occurred over one year ago.  Tennessee generally applies a one year limitations period to § 1983 claims.  See Berndt v. State of Tennessee, 796 F.2d 879, 883 (6th Cir. 1986).  Therefore, rather than recommending dismissal, I recommend that this case be TRANSFERRED to the Middle

District of Tennessee.

Conclusion

For the reasons set forth above, I recommend that the Vermont defendants' motion to dismiss (Paper 15) be GRANTED, that Bain's first motion to amend and/or join (Paper 14) be DENIED, and his second motion (Paper 26) be GRANTED in part and DENIED in part. All claims against the State of Vermont, the Vermont Department of Corrections, Robert Hofmann and Dr. Susan Wehry should be DISMISSED.[10] I further recommend that the surviving portion of this case, which consists solely of conduct that is directly related to Bain's treatment during his interstate transport, be TRANSFERRED to the Middle District of Tennessee.

Dated at Burlington, in the District of Vermont, this 7th day of May, 2008.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the

---

[10] Since the docket does not reflect service upon defendants Dr. Lippmann, Dr. Wade Warren, Prison Health Service, Inc., John Doe and Jane Doe, any claims against these defendants should be DISMISSED without prejudice.

24

portions of the proposed findings, recommendations or report
to which objection is made and the basis for such
objections.  Failure to file objections within the specified
time waives the right to appeal the District Court's order.
See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1);
Fed. R. Civ. P. 72(b), 6(a) and 6(e).